[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16624
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 24, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00292-CR-J-20-HTS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GERMAN CASTILLO-LAGOS,
a.k.a. Kevin Daniel Ramirez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 24, 2005)

Before BLACK, MARCUS  and PRYOR, Circuit Judges.

PER CURIAM:

German Castillo-Lagos appeals his 6-month sentence and 3-year term of

supervised release, imposed after he pled guilty to illegal re-entry after deportation,

in violation of 8 U.S.C. § 1326. On appeal, Castillo-Lagos argues that: (1) the district court violated his constitutional rights, pursuant to Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and United States v. Booker, 543 U.S. ___, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), by enhancing his term of supervised release based on the fact of a prior felony conviction that was neither alleged in the charging document nor admitted by him in the guilty plea, and (2) the district court's requirement, imposed pursuant to the DNA-collection requirements of 42 U.S.C. § 14135a(a), that he cooperate with the government in the collection of his DNA violated his Fourth Amendment right to be free from unreasonable searches and seizures.

Because Castillo-Lagos raised his Blakely/Booker objection in the district court, we review his sentence de novo, but will reverse only for harmful error. See United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). We review de novo the district court's legal analysis regarding the constitutionality of § 14135a(a). See Padgett v. Donald, 401 F.3d 1273 (11th Cir. 2005).

After thorough review of the record, as well as careful consideration of the parties' briefs, we find no Booker constitutional error. However, we find Booker non-constitutional, or statutory, error. Because the government has not met its

2

burden to show harmlessness, we vacate and remand Castillo-Lagos's sentence for resentencing, pursuant to the discretionary Sentencing Guidelines scheme now required by Booker. In all other respects, we affirm.

The relevant facts are these. On September 30, 2004, Castillo-Lagos, who waived his right to an indictment, was charged, in a one-count information, with unlawful re-entry after deportation, in violation of 8 U.S.C. § 1326. He pled guilty without the benefit of a plea agreement and proceeded to sentencing. According to the presentence investigation report ("PSI"), the Bureau of Immigration and Customs Enforcement ("ICE") was contacted by the Jacksonville Sheriff's Office ("JSO") on August 30, 2004 after Castillo-Lagos had fraudulently represented himself to the JSO as a Mexican citizen named Kevin Ramirez, in an attempt to obtain a background check. After ICE took Castillo-Lagos into custody, a review of his file revealed that he was a Honduran citizen who had been previously deported twice, on February 9, 2001 and on July 10, 2003. Castillo-Lagos's file further indicated that he did not have permission to be in the United States. Castillo-Lagos admitted to the ICE agents that he had re-entered the United States illegally in March 2004.

The PSI set Castillo-Lagos's base offense level at eight, pursuant to U.S.S.G. § 2L1.2, and recommended the following: (1) a 4-level upward

3

adjustment, pursuant to § 2L1.2(b)(1)(D), which applies when a defendant was previously deported, or unlawfully remained in the United States, after being convicted of a felony,[1] and (2) a 2-level downward adjustment for acceptance of responsibility, under § 3E1.1(a). With an adjusted offense level of 10 and a criminal history category I, Castillo-Lagos's Guidelines range was 6 to 12 months' imprisonment, followed by 2 to 3 years' supervised release. The statutory maximum term for his offense was 10 years' imprisonment and 3 years' supervised release.

Castillo-Lagos objected to the PSI's enhancement under § 2L1.2(b)(1)(D), arguing that the enhancement violated <u>Blakely</u>. He also asserted that because no prior felony conviction was alleged in the indictment, the maximum punishment for the offense should be 2 years' imprisonment and 1 year of supervised release. At the sentencing hearing, in response to the district court's inquiry about Castillo-Lagos's <u>Blakely</u> objection, defense counsel stated that Castillo-Lagos did not "factually dispute the presentence investigation report, just the legal consequences of those facts." The district court overruled the objections to the § 2L1.2(b)(1)(D) enhancement and the calculation of the statutory maximum. The court adopted the PSI's factual findings and resulting Guidelines range sentenced Castillo-Lagos to a

---

[1]In March 2003, Castillo-Lagos was convicted of illegal re-entry after a previous deportation.

4

6-month term of imprisonment followed by a 3-year term of supervised release. The district court further ordered, over Castillo-Lagos's objection, that he "cooperate with the collection of DNA by whomever in the United States government ultimately has the responsibility for collecting DNA." This appeal followed.

First, Castillo-Lagos argues that the district court erred by increasing the statutory maximum sentence applicable to his offense as a result of a prior conviction because the indictment did not allege that he had been convicted of an aggravated felony. He contends the sentence violated <u>Blakely</u> (now <u>Booker</u>), which, according to Castillo-Lagos, implicitly overruled the Supreme Court's decision in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998) (holding that fact of a prior conviction for purposes of enhancing a defendant's sentence may be determined by the sentencing court by a preponderance of the evidence). We disagree.

In <u>Blakely</u>, the Supreme Court held that, under the State of Washington's mandatory sentencing guidelines system, the imposition of a sentencing enhancement based upon facts neither admitted by the defendant nor found by the jury violated the defendant's Sixth Amendment right to a jury trial. <u>Blakely</u>, 542 U.S. at ---, 124 S. Ct. at 2534-38. Thereafter, the Supreme Court extended this

5

holding to the federal Sentencing Guidelines. Booker, 543 U.S. at ---, 125 S. Ct. at 760. Based on the Supreme Court's analysis in Booker, we have stated that there are two types of Booker error: (1) a Sixth Amendment error -- the error of imposing a sentencing enhancement based on judicial findings that go beyond the facts admitted by the defendant or found by the jury, and (2) a statutory error -- the error of being sentenced under a mandatory guidelines system. United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

In the instant case, we easily conclude, based on our consistent line of post-Booker cases on the very issue presented here, that there was no Booker constitutional error. In Almendarez-Torres, "the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence." United States v. Marseille, 377 F.3d 1249, 1257 (11th Cir.), cert. denied, --- U.S. ---, 125 S. Ct. 637, 160 L. Ed. 2d 480 (2004). The Almendarez-Torres decision "was left undisturbed by Apprendi, Blakely, and Booker." Shelton, 400 F.3d at 1329; see also United States v. Orduno-Mireles, 405 F.3d 960, 962 (11th Cir.) (stating that the holding in Almendarez-Torres was left undisturbed by Booker), petition for cert. filed, No. 05-5141 (Jul. 1, 2005). Because Castillo-Lagos admitted to the fact

6

of his prior conviction and a Sixth Amendment violation does not occur when a district court relies on prior convictions to enhance a defendant's sentence, the district court did not commit Booker constitutional error.[2]

Despite the absence of a Sixth Amendment violation, because Castillo-Lagos was sentenced under a mandatory sentencing regime, there was Booker non-constitutional, or statutory, error.  United States v. Gallegos-Aguero, 409 F.3d 1274, 1277 (11th Cir. 2005) (citing United States v. Rodriguez, 398 F.3d 1291, 1300 (11th Cir.), cert. denied, 125 S. Ct. 2935 (2005)).  "The use of the guidelines as mandatory was error, even in the absence of a Sixth Amendment violation." Gallegos-Aguero, 409 F.3d at 1277 (citing Shelton, 400 F.3d at 1330-31).

The government bears the burden to establish the harmlessness of a Booker non-constitutional error and must show that the error did not affect the defendant's substantial rights.  Paz, 405 F.3d at 948.  "The non-constitutional harmless error standard is not easy for the government to meet." United States v. Mathenia, 409 F.3d 1289, 1292 (11th Cir. 2005).  A statutory Booker error is harmless if, "viewing the proceedings in their entirety, a court determines that the error did not affect the [sentence], 'or had but very slight effect.' If one can say 'with fair

---

[2]  The Supreme Court's recent decision in Shepard v. United States, --- U.S. ----, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005), is not implicated here.  Castillo-Lagos did not dispute his prior conviction.  Accordingly, the district court did not resolve disputed facts, but based its sentence on admitted facts.  Id. at 1263.

7

assurance . . . that the [sentence] was not substantially swayed by the error,' the [sentence] is due to be affirmed even though there was error." Id. (citations omitted).

Here, the government has failed to meet its burden. Moreover, our own review of the record reveals no indication of what sentence the district court would have imposed had it known the Guidelines were advisory only. Accordingly, because "[w]e simply do not know what the sentencing court would have done," the government has not met its burden to show that the error was harmless, and we must vacate Castillo-Lagos's sentence and remand to the district court for resentencing. See United States v. Davis, 407 F.3d 1269, 1271 (11th Cir. 2005); Compare United States v. Phillips, 413 F.3d 1288, 1293 (11th Cir. 2005) (finding statutory error harmless where district court articulated alternate sentence using factors set forth in 18 U.S.C. § 3553(a) (citing Mathenia, 409 F.3d at 1292-93; United States v. Petho, 409 F.3d 1277, 1280 (11th Cir. 2005); United States v. Robles, 408 F.3d 1324, 1327 (11th Cir. 2005)).[3]

---

[3] We note that the district court correctly calculated Castillo-Lagos's Guidelines range. See United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005) (stating after Booker, district courts must consult the Guidelines and "[t]his consultation requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines"). We do not mean to imply by our holding that on remand the district court must first impose a lesser sentence. Rather, on remand the district court is required to sentence Castillo-Lagos according to Booker, considering the properly calculated Guidelines range and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)." Booker, 125 S. Ct. at 757.

Finally, we are unpersuaded by Castillo-Lagos's argument that the district court's requirement that he cooperate with the government in the collection of his DNA violated his Fourth Amendment right to be free from unreasonable searches and seizures. Federal law provides that a DNA sample shall be collected from each person in the custody of the Bureau of Prisons or on probation, parole, or supervised release, who was convicted of a qualifying federal offense. 42 U.S.C. § 14135a(a)(1), (2). A qualifying federal offense includes any felony. 42 U.S.C. § 14135a(d)(1).

In Padgett, we held that a Georgia DNA profiling statute did not violate the Fourth Amendment of the U.S. Constitution. See 401 F.3d at 1275, 1280.[4] We applied a balancing test and determined that because the "legitimate interest in creating a permanent record of convicted felons for law enforcement purposes outweighs the minor intrusion involved in taking prisoners' saliva samples and storing their DNA profiles, given prisoners' reduced expectation of privacy in their identities," the statute did not violate the Fourth Amendment. Id. at 1280. As Castillo-Lagos concedes, no meaningful distinction exists between the Georgia

---

[4]The Georgia DNA profiling statute provided in relevant part that "on and after July 1, 2000, any person convicted of a felony and incarcerated in a state correctional facility shall at the time of entering the prison system have a sample of his or her blood, an oral swab, or a sample obtained from a noninvasive procedure taken for DNA (deoxyribonucleic acid) analysis to determine identification characteristics of that person." Padgett, 401 F.3d at 1275, n.1.

DNA profiling statute that we upheld and the federal DNA profiling statute. According to our prior precedent rule, Padgett is the controlling law on this issue and we must follow it here. See United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993) ("[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc or by the Supreme Court.").

Based on the foregoing, we vacate and remand Castillo-Lagos's sentence to the district court for re-sentencing consistent with the remedial holding of Booker. We affirm on all other issues raised in this appeal.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART WITH INSTRUCTIONS.**