[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10706
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cr-00129-SPC-CM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM CARDONA-CASTILLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 15, 2016)

Before TJOFLAT, MARTIN and JILL PRYOR, Circuit Judges.

PER CURIAM:

William Cardona-Castillo appeals his conviction and 71-month prison sentence for one count of illegal reentry after being convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  Cardona-Castillo advances four arguments on appeal.  First, he argues that the district court erred by denying his motion to suppress all evidence obtained as a result of an illegal stop and show-up.  Second, he argues that the district court abused its discretion by overruling five of his evidentiary objections at trial.  Third, he argues that the district court erred by denying his motion for judgment of acquittal.  Finally, he argues that the district court erred by applying two additional points to his criminal history based on its finding that he was on probation at the time of the offense.  For the reasons that follow, we affirm.

## I.

Cardona-Castillo first argues that the district court erred by denying his motion to suppress all evidence from a stop and show-up.  He alleges that the officers lacked reasonable suspicion to detain him because his detention was based on an overly broad and vague description of a suspect and that the show-up was unduly suggestive and prejudicial.  A motion to suppress evidence presents a mixed question of law and fact.  United States v. Lewis, 674 F.3d 1298, 1302 (11th Cir. 2012).  We review the district court's rulings of law de novo and its findings

of fact for clear error.  Id. at 1302–03.  We construe all facts in the light most favorable to the party that prevailed below.  Id. at 1303.

The Supreme Court has held that the exclusionary rule does not apply in civil deportation proceedings where the evidence of an individual's unlawful presence in the United States was derived from an unlawful arrest.  INS v. Lopez-Mendoza, 468 U.S. 1032, 1034, 104 S. Ct. 3479, 3481 (1984).  The Court found that "application of the exclusionary rule in [these] cases . . . would compel the courts to release from custody persons who would then immediately resume their commission of a crime through their continuing, unlawful presence in this country."  Id. at 1050, 104 S. Ct. at 3489.  Our Court has expanded this holding to criminal proceedings when the evidence sought to be suppressed is "offered in a criminal prosecution only to prove who the defendant is."  United States v. Farias-Gonzalez, 556 F.3d 1181, 1182 (11th Cir. 2009).  This evidence of identity includes a defendant's fingerprints and alien file.  Id. at 1189.

The district court did not err by denying Cardona-Castillo's motion to suppress his fingerprints and alien file.  The government used Cardona-Castillo's fingerprints and alien file for the sole purpose of establishing his identity.  Even if they were obtained as the result of an unlawful search or seizure, the fingerprints and alien file were not due to be suppressed when used only to prove Cardona-Castillo's identity.  See id.

## II.

Cardona-Castillo also argues that the district court abused its discretion by overruling five of his evidentiary objections at trial.  He claims that the district court should not have allowed the admission of: (1) a sworn statement made by Cardona-Castillo in January 2011 regarding his original means of entry into the United States, (2) his alien file, (3) a warrant of deportation, (4) a "warning to alien removed or deported" notice, and (5) a flight manifest to Cardona-Castillo's home country showing his name on the passenger list.  Cardona-Castillo alleges that the sworn statement was made in violation of his Miranda[1] rights, and that the various pieces of evidence were unfairly prejudicial or improperly authenticated under Federal Rules of Evidence 403 and 901.

## A.

We review the district court's evidentiary rulings for abuse of discretion. United States v. Caraballo, 595 F.3d 1214, 1226 (11th Cir. 2010).  "We will reverse a district court's evidentiary rulings only if the resulting error affected the defendant's substantial rights."  United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003).

The government cannot introduce statements stemming from a custodial interrogation unless certain procedural protections were provided.  Miranda v.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

4

Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).  Custodial interrogation "mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  Id.  "[A] term of imprisonment, without more, is not enough to constitute Miranda custody."  Howes v. Fields, 565 U.S. ___, ___, 132 S. Ct. 1181, 1191 (2012).  In deciding whether a prisoner is in custody for Miranda purposes, we "focus on all of the features of the interrogation," which "include the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted."  Id. at 1192.

Under Federal Rule of Evidence 901, in order to "authenticat[e] or identify[] an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Public records may be authenticated by showing that the document "was recorded or filed in a public office as authorized by law" or was "from the office where items of this kind are kept."  Id. 901(b)(7).

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "The district court possesses broad discretion to admit evidence if it has any tendency to prove or

5

disprove a fact in issue," but "the court's discretion to exclude evidence under Rule 403 is limited." United States v. Terzado-Madruga, 897 F.2d 1099, 1117 (11th Cir. 1990). "[T]he application of Rule 403 must be cautious and sparing." United States v. Mills, 704 F.2d 1553, 1560 (11th Cir. 1983) (quotation omitted).

B.

The district court did not abuse its discretion in any of the five evidentiary rulings Cardona-Castillo appeals. First, Cardona-Castillo's sworn statement was not made in violation of his Miranda rights. Though he was in prison when he made the statement, Cardona-Castillo did not assert that he was in custody for the purposes of Miranda and the fact of his imprisonment does not establish custody on its own, without evidence that other features of the interrogation demonstrated custody. See Howes, 565 U.S. at ___, 132 S. Ct. at 1191–92. Further, the statement was not needlessly cumulative under Rule 403 simply because another individual's testimony could have proved the same fact. The "warning to alien removed or deported" document was also not unfairly prejudicial under Rule 403 because the document had probative value in establishing the fact of Cardona-Castillo's deportation.

Neither did the district court err in admitting Cardona-Castillo's alien file, warrant of deportation, and flight manifest. These documents were properly authenticated under Rule 901 because they were "from the office where items of

[these] kind[s] are kept," with the U.S. Immigration and Customs Enforcement office.  Fed. R. Evid. 901(b)(7).  The documents were not unfairly prejudicial under Rule 403 because they had probative value in establishing the fact of Cardona-Castillo's deportation.  The district court did not abuse its discretion in admitting the evidence.

III.

Cardona-Castillo next argues that the district court erred by denying his motion for judgment of acquittal because the government did not present sufficient evidence of his prior deportation.  To prove the offense of unlawful entry after deportation, the government must show that (1) the alien had been deported, (2) he entered, attempted to enter, or was found in the United States after deportation, and (3) he had not obtained permission to reenter.  8 U.S.C. § 1326(a).

We review both the denial of a motion for acquittal and the sufficiency of the evidence supporting a conviction de novo.  United States v. Hernandez, 433 F.3d 1328, 1332 (11th Cir. 2005).  We draw all factual and credibility inferences in favor of the government.  Id.  A defendant may move the court to enter a judgment of acquittal after the government closes its evidence, and the court must acquit if "the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  Evidence is sufficient to support a conviction if "a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond

7

a reasonable doubt." United States v. Diaz-Boyzo, 432 F.3d 1264, 1269 (11th Cir. 2005) (per curiam) (quotation omitted).  The evidence need not exclude every reasonable hypothesis of innocence, because the jury may choose between reasonable constructions of the evidence and is free to disbelieve the testimony of witnesses.  See Hernandez, 433 F.3d at 1334–35.

The district court did not err in denying the motion for judgment of acquittal. The alien file, warrant of deportation, "warning to alien removed or deported," and flight manifest all support the finding that Cardona-Castillo had been on a repatriation flight to Honduras in 2011.  This was sufficient evidence that Cardona-Castillo had been deported.

## IV.

Cardona-Castillo finally argues that the district court erred by adding two points to his criminal history based on a finding that he was on probation at the time of the offense.  He specifically alleges that he lacked knowledge that he was ordered to serve two years of probation after his term of imprisonment and that the two-point increase was improper because a separate case charging him with violation of probation had been dismissed by the state court and no decision was made about whether that dismissal was nunc pro tunc.

"We review findings of fact for clear error and application of the sentencing guidelines de novo." United States v. Gupta, 572 F.3d 878, 887 (11th Cir. 2009).

8

A factual finding is clearly erroneous only if we are "left with the definite and firm conviction that a mistake has been committed." Id. (quotation omitted).

Under the Sentencing Guidelines, two points are added to the defendant's criminal history "if the defendant committed the instant offense while under any criminal justice sentence, including probation." USSG § 4A1.1(d).  Active supervision is not required for a sentence to be considered a criminal justice sentence under § 4A1.1(d), and a defendant's subjective understanding that his probation had terminated upon deportation is not relevant to this two-point enhancement.  United States v. Phillips, 413 F.3d 1288, 1292 (11th Cir. 2005) (per curiam).

The district court correctly added two points to Cardona-Castillo's criminal history score.  Cardona-Castillo's Order of Probation indicates that his sentence included a two-year term of probation after he completed his initial term of incarceration.  He was still serving that probation term at the time of this offense.  Further, when the state court terminated Cardona-Castillo's warrant for a violation of his probation in a separate suit, there is no indication that the court made this dismissal nunc pro tunc such that it would impact the established duration of Cardona-Castillo's term of probation.

**AFFIRMED.**