10-3982-cr
United States v. Ramos

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term 2011

Argued: March 21, 2012                    Decided: April 26, 2012

Docket No. 10-3982-cr

UNITED STATES OF AMERICA,

*Appellee,*

-v-

NATIVIDAD DEJESUS RAMOS,

*Defendant-Appellant.*

Before: MCLAUGHLIN, SACK, AND LIVINGSTON, *Circuit Judges.*

Appeal from a judgment of conviction entered in the Northern District of New York (Suddaby, *J.*), sentencing Defendant-Appellant Natividad DeJesus Ramos principally to a term of imprisonment of 51 months pursuant to his conviction for illegally transporting aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii); 51 months for assisting an inadmissible alien in entering the United States, in violation of 8 U.S.C. § 1327; and 24 months for illegally being present in the United States after having previously been removed, in violation of 8 U.S.C. § 1326(a), all terms of imprisonment to run concurrently. Ramos argues, *inter alia*, that the district court erred in adding two points to his criminal history score pursuant to

§ 4A1.1(d) of the United States Sentencing Guidelines for his commission of an offense while under a criminal justice sentence. Ramos urges that this was error because he was allegedly unaware he had an unexpired term of supervised release at the time he committed the present offenses. We hold that Defendant-Appellant's knowledge that he was subject to a term of supervised release was not required for the district court to impose an enhancement based on the fact that Defendant-Appellant committed the instant crimes while "under a[ ] criminal justice sentence." U.S.S.G. § 4A1.1(d). We decline to reach Ramos's ineffective assistance claim and dismiss it without prejudice. With regard to all his other claims, we find them to be without merit and AFFIRM.

PAUL SILVER, Assistant United States Attorney (Brenda K. Sannes, Elizabeth A. Horsman, *on the brief*), *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, N.Y., for *Appellee.*

JULIA PAMELA HEIT, New York, N.Y., for *Defendant-Appellant.*

PER CURIAM:

Defendant-Appellant Natividad DeJesus Ramos ("Ramos") appeals a judgment of conviction entered in the Northern District of New York (Suddaby, *J.*) following Ramos's guilty plea to illegally transporting aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) ("Count 1"); assisting an inadmissible alien in entering the United States, in violation of 8 U.S.C. § 1327 ("Count 2"); and illegally being present in the United States after having previously been removed, in violation of 8 U.S.C. § 1326(a) ("Count 3"). On September 28, 2010, the district court sentenced

2

Ramos principally to 51-month terms of imprisonment on Counts 1 and 2, and a 24-month term on Count 3, all to run concurrently. On appeal, Ramos contends that the district court miscalculated the applicable sentencing range under the United States Sentencing Guidelines (the "Guidelines range") by adding two points to his criminal history pursuant to § 4A1.1(d) for Ramos's commission of the present offenses "while under any criminal justice sentence, including . . . supervised release . . . ." U.S.S.G. § 4A1.1(d). Ramos also contends that the district court erred, both procedurally and substantively, in its consideration of the sentencing factors in 18 U.S.C. § 3553(a), and he asserts that his attorney provided ineffective assistance at sentencing. For the following reasons, we dismiss Ramos's ineffective assistance claim without prejudice and otherwise AFFIRM the district court's judgment.

## BACKGROUND

On July 23, 2001, Ramos was sentenced in the United States District Court for the Southern District of Florida for violating 18 U.S.C. § 1544 by using the passport of another to enter the United States.[1] Ramos was sentenced to time served, to be followed by a three-year term of supervised release. As a condition of his supervised release, the court ordered as follows:

> If removed, the defendant shall not reenter the United States without the written permission of the Attorney General of the United States. Should the defendant be deported, the term of probation/supervised release shall be non-reporting while he[] is residing outside the United States. If the defendant reenters the United States within the term of probation/supervised release, he is to report to the nearest U.S. Probation Office within 72 hours of his arrival.

---

[1] Ramos was sentenced under the name "Jose Argueta."

3

After sentencing, Ramos was released into the custody of the Immigration and Naturalization Service for removal proceedings.[2]

Ramos was deported to El Salvador, his country of origin, on September 25, 2001. He reentered the United States approximately nine months later, still within the term of his supervised release. Ramos did not report to a United States Probation Office ("Probation Office") as required pursuant to his 2001 sentence. Ramos alleges that, at the time of his illegal reentry, he did not understand that he was on supervised release and was required to report to a Probation Office, since he thought his sentence terminated upon his removal to El Salvador. Once the fact of Ramos's illegal reentry and failure to report became known to the probation authorities (still during the original term of his supervised release), a warrant issued for Ramos's arrest for violation of the terms of his supervised release.

On August 21, 2009, while the above-mentioned warrant was still outstanding, Ramos was detained while assisting the illegal entry of aliens across the border between the United States and Canada. Ramos subsequently pled guilty to all three counts of an indictment charging him with violations of 8 U.S.C. § 1324(a)(1)(A)(ii) (transportation of an illegal alien in knowing or reckless disregard of the fact that the alien is in the United States illegally); 8 U.S.C. § 1327 (knowing aid or assistance to the entry of an alien inadmissible under 8 U.S.C. § 1182); and 8 U.S.C. § 1326(a)

---

[2] The Immigration and Naturalization Service "ceased to exist on March 1, 2003, and its functions were transferred to the Department of Homeland Security." *Zhang v. Holder*, 617 F.3d 650, 653 n.1 (2d Cir. 2010). The change is immaterial to the disposition of this case.

(illegal presence in the United States of an alien previously removed). At sentencing, the district court adopted the Guidelines calculation in the Presentence Investigation Report, concluding that Ramos's Guidelines range was 51 to 63 months, based upon a total offense level of 22 and a criminal history category of III. In reaching this result (and over the defendant's objection), the district court imposed two criminal history points based on the fact that, at the time he committed the instant offenses, Ramos was "under a[] criminal justice sentence." U.S.S.G. § 4A1.1(d). The district court sentenced Ramos principally to a prison term of 51 months for each of the first two counts discussed above and 24 months for the third count, all to run concurrently.

**DISCUSSION**

*Standard of Review*

"[T]he role of the Court of Appeals [in the review of sentences] is limited to examining a sentence for reasonableness, which is akin to review under an 'abuse-of-discretion' standard." *United States v. Hasan*, 586 F.3d 161, 167 (2d Cir. 2009). A district court may commit two kinds of error in sentencing: procedural or substantive. "A district court commits procedural error where it fails to calculate the Guidelines range . . . , makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (*en banc*). A sentence is substantively unreasonable "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Id.* at 189 (internal quotation marks omitted).

5

*Merits*

On appeal, Ramos first argues that the district court procedurally erred by improperly imposing a two-point increase pursuant to § 4A1.1(d) of the Guidelines in calculating his criminal history. Section 4A1.1(d) instructs as follows: "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Section 4A1.2(m) explains that § 4A1.1(d) applies to "[a] defendant who commits the instant offense while a violation warrant from a prior sentence is outstanding (e.g., a probation, parole, or supervised release violation warrant) . . . if that sentence is otherwise countable, even if that sentence would have expired absent such warrant." Ramos does not dispute that he was under a "criminal justice sentence" for purposes of U.S.S.G. § 4A1.1(d). Rather, he argues that he did not understand that his illegal reentry into the United States in 2002 required him to report to a Probation Office and that, accordingly, the supervised release warrant predicated on his illegal reentry and failure to report should not lead to a two-point increase pursuant to § 4A1.1(d).

We disagree. Even assuming *arguendo* that Ramos did not understand that he was subject to a term of supervised release and had a duty to report himself to the nearest Probation Office when he reentered the country (a condition set forth in the judgment issued in his 2001 criminal case), these facts are simply not relevant to the application of § 4A1.1(d). Section 4A1.1(d) does not require a defendant to have knowledge that he is under a criminal justice sentence at the time he or she commits

6

a new offense in order for its two-level increase to apply. The provision's plain language states that the two-level increase is applicable "if the defendant committed the instant offense while under any criminal justice sentence." *Id.* § 4A1.1(d). Nowhere does it state that the defendant must have *known* that he or she was under such a sentence.

Section 4A1.2(m) underscores the point. This provision makes clear that a defendant "commit[s] the instant offense while under a[] criminal justice sentence," § 4A1.1(d), when, as here, the defendant "commits the instant offense while a violation warrant from a prior sentence is outstanding (e.g., a probation, parole, or supervised release violation warrant)," § 4A1.2(m), even if the criminal justice sentence would otherwise have expired many years earlier. Many defendants may be unaware of such *ex parte* warrants when they issue, potentially extending the term of their probation, parole, or supervised release. Yet this fact has no apparent significance to the Sentencing Commission's conclusion that a two-point increase to their criminal history scores is merited, when such defendants commit new crimes while still subject to supervision.

Ramos's contrary construction of § 4A1.1(d) produces peculiar results, at best, when considered in light of § 4A1.1 as a whole. Section 4A1.1(a), for instance, requires that in calculating a criminal history category, the district court is to "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month." If a defendant's knowledge of the pendency of a criminal justice sentence is required pursuant to § 4A1.1(d) (despite its absence from the provision's clear text), there is no

7

apparent reason that § 4A1.1(a) would not also require proof of knowledge (in this case, that one had served a prior sentence over 395 days). But § 4A1.1(a)–and the rest of § 4A1.1, including the provision at issue here–is not intended to punish more severely those who are consciously aware of their past criminal history, as opposed to those who may have forgotten it. Rather, as the Sentencing Commission has said,

> [a] defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.

U.S.S.G. Ch. 4, Part A (introductory cmt.).[3]

Every circuit court to have considered the question has concluded that the defendant's knowledge of a pending criminal justice sentence is not required for the purpose of § 4A1.1(d)'s two-point addition to a defendant's criminal history score when the defendant "commit[s] the instant offense while under any criminal justice sentence." *See United States v. Phillips*, 413 F.3d 1288, 1292 (11th Cir. 2005) (*per curiam*) (holding that the defendant's subjective belief that his term of parole ended at a prior point in time was irrelevant to the application of § 4A1.1(d)); *United States*

---

[3] *See also United States v. McCann*, 366 F.3d 46, 58 & n.14 (1st Cir. 2004) (noting that "the purposes underlying [§ 4A1.1], as expressed in the Introductory Comments to the criminal history section, [do not] support [the] assertion" that "a defendant's subjective knowledge concerning the sentence he is serving is at all relevant to the determination of his criminal history"), *judgment vacated on other grounds by* 543 U.S. 1104 (2005).

*v. McCann*, 366 F.3d 46, 58 (1st Cir. 2004) ("[T]here is nothing in the text of the criminal history provisions [of the Guidelines] that suggests that a defendant's subjective knowledge concerning the sentence he is serving is at all relevant to the determination of his criminal history."), *judgment vacated on other grounds by* 543 U.S. 1104 (2005). We see no basis for disagreeing with these conclusions of our sister circuits, and ample reason to join them in holding that no such knowledge is necessary.[4]

Ramos's other arguments fare no better. Ramos claims that the district court erred, both procedurally and substantively, by failing to consider the sentencing objectives detailed in 18 U.S.C. § 3553, and specifically by ignoring the hardships he faced in El Salvador prior to the commission of the instant offense. The district court made clear, however, that it had "reviewed and considered all the pertinent information, including but not limited to the Presentence Investigation Report, the addendum, submissions by counsel, and the factors outlined in 18 U.S.C. Section 3553, and the Sentencing Guidelines." We "never have required a District Court to make specific responses to points argued by counsel in connection with sentencing." *United States v. Bonilla*, 618 F.3d 102, 111 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 1698 (2011). Ramos's 51-month sentence, moreover, is not substantively unreasonable, but is among

---

[4] Ramos's counsel contended at oral argument, for the first time, that the two-point increase in his criminal history in the circumstances of this case violated his due process rights. Ramos waived this argument by failing to include it in his briefing to this Court, and we therefore decline to consider it. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

the "overwhelming majority of cases" in which "a Guidelines sentence [is] comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

Finally, Ramos argues that his counsel below rendered constitutionally ineffective assistance. "When faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before us." *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003). Because we have a "baseline aversion to resolving ineffectiveness claims on direct review," *id.* (internal quotation marks omitted), we decline to consider the argument at this time. Ramos may of course pursue this claim in a petition for writ of habeas corpus under 28 U.S.C. § 2255.

## CONCLUSION

For the foregoing reasons, we dismiss without prejudice Ramos's claim for ineffective assistance of counsel at sentencing. The judgment of conviction is in all other respects AFFIRMED.